IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Criminal No.: CCB-16-0267 |
| | ) | |
| CORLOYD ANDERSON | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION TO SEVER CASE FROM CO-DEFENDANTS**

**COMES NOW**, Corloyd Anderson, by and through undersigned counsel, and moves this Honorable Court sever his case from his co-defendants.

1. <u>Prejudicial Impact of Evidence</u>

On February 25, 2019, government counsel filed a motion for an anonymous jury, ECF #1004. In that motion the government described various murders, attempted murders, and conspiracies to commit murders in support of their motion for an anonymous jury. Specifically, the pleading describes various murdered ordered by Bailey and attempts by Dante Bailey to plot killings of the prosecuting attorney and law enforcement officers involved in the case. "The government intends to introduce much of this evidence at trial." (See Govt. plead. at pg. 7).

Mr. Anderson has no connection or involvement in these allegations to plot murders. If he is to proceed to trial in a case in which these allegations are presented, he will be highly prejudiced. The evidence the government seeks to introduce is highly inflammatory and will surely impact jurors' views towards the defendants involved in those alleged acts as well as spill over to Mr. Anderson.

There will be evidence that Mr. Anderson was associated with Mr. Bailey. The defense and the government dispute the extent of association between the two. Nevertheless, even with the jury just hearing the undisputed association, this will be enough for the prejudicial impact of

the evidence of the murders and attempted plots to color the jurors' view of Mr. Anderson as well. There is no basis for introduction of this evidence in Mr. Anderson's trial but for the fact that he is tried together with other co-defendants. Therefore, the only recourse is to sever his case out for his co-defendants.

Federal Rule of Criminal Procedure 14 provides for relief from prejudicial joinder. "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." *Fed. R. Crim. Pro 14(a)*. The Supreme Court has emphasized that in joint trials, "the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *See United States v. Johnson*, 478 F.2d 1129, 1132 (5th Cir. 1973) (citing *Schaffer v. United States*, 362 U.S. 511, 516 (1960)).

Limiting instructions will not suffice. In 1932 Judge Learned Hand characterized limiting instructions as a mental gymnastic beyond the power of a jury to follow *United States v. Nash*, 54 F.2d 1006, 1007 (2d Cir. 1932). In 1949 Justice Robert Jackson characterized jurors' ability to follow limiting instructions as "unmitigated fiction" – *Krulewitch v. United States*, 336 U.S. 440, 453 (1949). In 1956 Judge Jerome Frank called cautionary or limiting instructions a judicial lie that damaged the decent administration of justice – *United States v. Grunewald*, 233 F.2d 556, 574 (2d Cir. 1956). In 1968 Justice William Brennan expressed concern over the effectiveness of limiting instructions – *Bruton v. United States*, 391 U.S. 123, 135 (1968).

> It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, as was recognized in *Jackson v. Denno*, supra, there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.

In 1987 Justice Antonin Scalia expressed similar reservations – *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).[1] In 2007 author Peter J. Smith, *New Legal Fictions*, 95 The Georgetown Law Journal 1435, 1450 – 1451 stated:

> Courts have used so-called limiting instructions . . . for many years, and they have repeatedly defended the practice against challenges by asserting the "crucial assumption" that "jurors carefully follow instructions" . . . Yet a large body of social science research conducted over the past twenty years demonstrated that jurors' abilities to follow limiting instructions are, at best, limited.

In 2012, the Fifth Circuit in *U.S. v. McRae*, 702 F.3d 806, 827 (5th Cir. 2012) stated "[h]ere, however, we are unconvinced that limiting instructions did, or could have cured the prejudice of the spillover effect from the government's case against McCabe . . ." In 2014, District Judge James K. Bredar stated: "The Court is skeptical as to the efficacy of limiting instructions in general, and it is especially dubious in this circumstance." (*U.S. v. Riley*, 21 F. Supp. 3d 540, 548 (D. Md. 2014). In 2015, the Hon. Alex Kozinski of the Ninth Circuit Court of Appeals stated that the presumption that jurors follow instructions is "actually more of a guess that we've elevated to a rule of law." (Alex Kozinski, *Criminal Law 2.0*, 44 Geo.L.J. Ann. Rev. Crim. Proc. viii (2015).

In sum, the ability of the jury to follow the limiting instructions in the circumstances of the evidence that will be presented in this case will be an impossible mental gymnastic. One is hard-pressed to see how a jury hearing all the details of the murders, attempted murders and the allegations of plots against the prosecutor and law enforcement involved in this case, could possibly separate, forget all they hear and keep an open mind when reviewing the evidence against Anderson.

---

[1] *Richardson* forms the modern day basis for the presumption that jurors follow instructions and is often cited. Yet, Justice Scalia expressed doubt, not certainty, about that conclusion – see in accord Judith Ritter, *Your Lips Are Moving . . . but the Words aren't Clear, Dissecting the Presumption That Jurors Understand Instructions*, 69 Mo. L. Rev. 163, 203 (2004) – "He [Justice Scalia] candidly explains that the presumption governs, not so much because we have confidence in its truth, but because it represents a fair accommodation of the government's interest in efficiency."

2. Anonymous Juror[2]

It appears that without a severance Mr. Anderson may lose his right to a regular jury panel selection process and instead be subject to an anonymous jury. The decision to empanel an anonymous jury is "an unusual measure." *United States v. Shryock*, 342 F.3d 948, 971 (9th Cir. 2003). Mr. Anderson's constitutional rights will be infringed by empaneling an anonymous jury. Again, the allegations of murders, attempted murders, and the plots to kill do not involve Mr. Anderson.[3] Clearly there is nothing tying Mr. Anderson to any plots to kill potential witnesses, or to intimidate or tamper with jurors. The government's evidence against Anderson is that he supplied members with drugs to sell and that he was a member of MMP but that he was not involved in violence. Allegations of supplying drugs is a far cry from direct involvement in murders, attempted murders, plots to kill and potential juror tampering. Normally, allegations of drug selling do not require the extreme step of empaneling an anonymous jury.

Following *United States v. Dinkins*, 691 F.3d 358 (4th Cir. 2012), the government in their pleading requesting an anonymous jury, puts forth reasons in support of the Fourth Circuit factors commonly referred to as the "Ross Factors" in determining whether there are strong reasons for an anonymous jury. However, the government's reasons do not apply specifically to Mr. Anderson. Although, the government claims Anderson was involved in organized crime, there is no evidence that he is capable of harming jurors. Nothing in his prior criminal record supports such a finding. Nor can the government point to any past attempts by Anderson to interfere with the judicial process. Thus to lump Anderson together with the other defendants in

---

[2] In the event the motion is not granted, Mr. Anderson opposes the Government's request for an anonymous jury in his trial.

[3] Very recently government counsel informed undersigned that as to the Antoine Ellis murder, the weapon used belonged to Anderson and that Anderson disposed of the weapon sometime after the murder. Undersigned has no further information relative to the allegations of Anderson's connection to the weapon and his alleged disposing of the weapon, nor what he knew or was informed of regarding alleged use of the weapon vis a vis the murder.

4

support of an anonymous jury violates his rights to select an impartial jury of his peers. Withholding the potential juror information the government suggests will affect Mr. Anderson's constitutional right to conduct an informed voir dire examination and to challenge effectively the seating of individual jurors.

The circumstances which lead to empaneling an anonymous jury in *Dinkins* do not apply here. In *Dinkins* the Court used a jury questionnaire therefore, the parties were able to obtain a multitude of additional information about the potential jurors which we do not have here. It was the "incredibly intrusive nature" of the questions in the jury questionnaire which prompted the district court to order an anonymous jury.

A district court's decision to empanel an anonymous jury in a non-capital case, must rest on something more than speculation or inferences of potential risk. *Dickens* citing *United States v. Krout,* 66 F.3d 1420, 1427 (5th Cir. 1995). But for Mr. Anderson being tried with other co-defendants he would not be deprived of his right to have an informed voir dire examination and to effectively challenge the seating of individual jurors. Mr. Anderson moves for severance to preserve his Sixth Amendment right to be tried before an impartial jury.

**WHEREFORE**, Corloyd Anderson moves for a severance to protect his right to a fair trial before an impartial jury.

Respectfully submitted,

/s/

_____
 Elita C. Amato
2111 Wilson Blvd., 8th floor
Arlington, VA  22201
703-522-5900

Attorney for Anderson

## CERTIFICATE OF SERVICE

I hereby certify that this Memorandum was filed electronically through the ECF filing system on this 1st day of March 2019, thereby, providing service electronically upon all parties in this case.

/s/
Elita C. Amato